UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP L. JONES, | : | Case No.: 5:19 CV 2063 |
| | : | |
| Petitioner, | : | |
| | : | JUDGE SOLOMON OLIVER, JR. |
| vs. | : | |
| | : | |
| TIM SHOOP, WARDEN, | : | **MEMORANDUM OF OPINION** |
| | : | **AND ORDER** |
| Respondent. | : | |

Petitioner Phillip Jones has now filed in this capital habeas corpus case a motion to stay these proceedings and hold them in abeyance while he pursues remedies in Ohio state courts. (Doc. 45.) Jones seeks to return to state court to exhaust two of his habeas claims asserting ineffective assistance of trial counsel. (*See id*. at 9-10.)[1] He further moves to stay this case while he pursues a petition for post-conviction relief in state court alleging that he is ineligible for the death penalty under a new Ohio law barring the execution of persons with serious mental illness. (*Id*. at 3.) Respondent Warden Tim Shoop opposes the motion. (Doc. 47.) Jones has filed a reply brief. (Doc. 49.) For the following reasons, Jones' motion is denied.

### RELEVANT BACKGROUND

Jones was convicted and sentenced to death in an Ohio state court for the aggravated murder

---

[1] All references to page numbers of documents in the court's electronic court filing system ("ECF") are to the page numbers assigned by ECF, not to the original documents' page numbers or ECF "PageID" numbers.

and rape of Susan Yates. *See State v. Jones*, 135 Ohio St. 3d 10, 10-17 (Ohio 2012). His state direct appeal and post-conviction petitions were unsuccessful. *See id.*; *State v. Jones*, 2011 WL 5869752 (Ohio Ct. App. Nov. 23, 2011); *State v. Jones*, 2019 WL 385467 (Ohio Ct. App. Jan. 30, 2019).

Jones filed his original habeas petition in this court on June 24, 2020. (Doc. 11-2.) With the court's permission, he filed an amended petition on October 29, 2021. (Doc. 35-2.) He then filed a second amended petition, again with permission, on April 8, 2022. (Doc. 44-2.) Among his eleven grounds for relief are two claims asserting ineffective assistance of trial counsel that Jones contends he did not raise in state courts, one for failing to investigate mitigating evidence regarding his potential pediatric developmental disabilities due to his mother's alleged alcohol consumption while pregnant (*id.* at 152-56 (tenth ground for relief)), and the other for failing to obtain a forensic medical expert to support the defense theory that Jones accidentally caused Ms. Yates' death by strangulation (*id.* at 157-73 (eleventh ground for relief)).

Jones now has filed a motion to stay this case and hold it in abeyance so that he can exhaust these two claims in state court. (Doc. 45 at 9-10.) He also requests a stay while he pursues a petition for post-conviction relief in state court alleging that he is ineligible for the death penalty under a new Ohio law barring the execution of persons with serious mental illness. (*Id.* at 3.) Respondent opposes the motion on the grounds that the two ineffective-assistance claims are not unexhausted but are procedurally defaulted because Jones has no state-court remedy left to pursue them, and he is not entitled to a stay while litigating a state-law claim relating to his eligibility for the death penalty. (Doc. 47 at 2-6.)

**ANALYSIS**

A.     *Rhines* Stay Pending Exhaustion of Jones' "New" Habeas Claims

1.     *Rhines v. Weber*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that state prisoners fully exhaust federal constitutional claims in state courts before those claims may be reviewed by federal district courts on habeas corpus review. 28 U.S.C. § 2254(b)(1). This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion doctrine, however, refers only to remedies still available at the time of the federal petition. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). In that situation, procedural default and not exhaustion bars federal habeas review. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law'") (internal citations omitted); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that when a habeas petitioner presents a "mixed petition," with both exhausted and unexhausted claims, the petition must be dismissed, as comity requires that state courts have the first opportunity to review the unexhausted claims. *Id.* at 518-19. *Lundy*'s "total exhaustion" requirement created a dilemma for some petitioners, however, because a return to state court could result in the unexhausted claims

3

becoming time-barred under AEDPA's one-year statute of limitations.

To avoid this harsh result, in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court authorized district courts, when confronted with a mixed petition, to stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of the perfected petition. *Id*. at 277. But the Court emphasized that stay and abeyance is appropriate only where the district court determines that: (1) there was good cause for the petitioner's failure to exhaust claims first in state court; (2) the petitioner's unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *Id*. at 277-78. The procedure should be used sparingly, the Court cautioned, because if employed too frequently, it could undermine AEDPA's goals of "'reduc[ing] delays in the execution of state and federal sentences, particularly in capital cases,'" and streamlining federal habeas proceedings by encouraging petitioners to seek relief from state courts first. *Id.* at 276-77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).

### 2. Jones' "New" Habeas Claims

Jones argues that his habeas petition raises two "new" ineffective-assistance claims that are unexhausted, and he requests stay and abeyance so that he can return to state court to litigate them. (Doc. 45 at 5.) In one, his tenth ground for relief, Jones contends his trial counsel were ineffective because they had evidence "suggesting" that Jones' mother had "consumed alcohol during pregnancy" and of Jones' cognitive impairment in childhood, but they failed to develop mitigating evidence of Jones' childhood developmental disorders "potentially" caused by her drinking. (Doc. 44-2 at 153.) He notes the sole defense expert at trial, Dr. James Siddall, a forensic psychologist, conducted a "[b]rief" neuropsychological cognitive examination of Jones, but found no evidence of

4

a neurological disability. (*See id.* at 155.) Jones supports his habeas claim with a report from Dr. Julian Davies, a pediatrician and expert in fetal alcohol spectrum disorder, who, "[u]pon a simple review of [Jones'] records and evaluation," has diagnosed him as having "static encephalopathy with alcohol consumption suspected," a disability that "indicates probable organic brain damage . . . ." (*Id*. at 153; *see also* Doc. 44-3 (Davies Rep.).)

Jones' second "new" claim, his eleventh ground for relief, asserts that counsel were deficient for failing to retain a forensic medical expert to support his primary defense at trial that he accidentally strangled the victim to death "while engaging in rough sex and, at her request, choking her to increase her arousal." (*Id*. at 157.) Defense counsel relied at trial, he contends, on their cross-examination of the county medical examiner to refute his opinion that Jones purposefully killed Ms. Yates. (*See id*. at 157.) Jones submits as support for this claim a report by Dr. Jonathan Arden, a forensic pathologist, who found "important errors" the coroner made in his trial testimony (*id*. at 161) and concluded from evidence in the record that the victim died from "'sudden cardiac death . . . during a sex act with neck compression and cocaine use'" (*id*. at 164 (quoting Doc. 44-4 (Arden Rep.) at 5)).

   **3.**   ***Rhines* Analysis**

Jones contends that he is entitled to a stay because he never presented these two claims to state courts and they are unexhausted. (Doc. 45 at 3.) Respondent counters that the claims are not unexhausted, but are procedurally defaulted, as there is no available state-court remedy left for Jones to pursue. (Doc. 47 at 2-4.) But a review of the record reveals that these claims are neither "new" and unexhausted, nor procedurally defaulted. Jones presented both claims to state courts on post-conviction review, where they were adjudicated and rejected on the merits.

As in his tenth habeas ground for relief, Jones asserted in state post-conviction proceedings that his trial counsel were ineffective for failing to investigate Jones' "potential neurological damage" for mitigation purposes. (Doc. 18-2 (Post-Conviction Pet.) at 571.) He submitted the affidavit of Dr. Bob Stinson, a psychologist, who posited that defense counsel should have retained an expert to conduct a neurological or neuropsychological evaluation because several factors in Jones' background indicated neuropsychological deficits, including:

> Phillip's mother was described as a "recovering alcoholic," and information obtained by the mitigation specialist suggested the possibility of fetal alcohol syndrome in Phillip, increasing the likelihood of neurological / neuropsychological deficits from birth.

(*Id*. (quoting Doc. 18-2 at 696 (Stinson Aff.)).) Jones also moved for funds for neuropsychological testing and discovery. (*Id*. at 799-820.)

The trial court denied Jones' petition and motions for testing and discovery. (*Id*. at 844-64.) As to Jones' ineffective-assistance claim relating to neurological damage, the court noted that Dr. Stinson cited evidence about Jones' family history and background that already had been presented to the jury and that he just "suggest[ed] *potential* neurological damage." (*Id*. at 856 (emphasis in original).) It further concluded that Dr. Stinson's report was "merely . . . a new expert opinion that [was] different from the theory used at trial," and it was not objectively unreasonable for counsel to rely on the expert they retained. (*Id*.)

The state appellate court affirmed the trial court's judgment on all claims except those alleging ineffective assistance of counsel in the penalty phase of trial. *Jones*, 2011 WL 5869752, at *1. It held that those claims raised "serious concerns about the timing and extent of Mr. Jones's lawyers' mitigation investigation" and the trial court should have held an evidentiary hearing on the matter. *Id*. at *14. In so ruling, the court noted the testimony of Jones' psychology expert, Dr.

6

James Sidall, who "further criticized Mr. Jones's defense team for not recognizing that he has possible neurological or neuropsychological deficits that should have lead [*sic*] to an appropriate evaluation and for not using published psychological research to illustrate a connection between Mr. Jones's history and his anti-social behavior." *Id*. at *10. He diagnosed Jones as having schizoaffective disorder. *Id*. The appellate court remanded the case for a hearing. *Id*. at *17.

Upon remand, the trial court conducted a six-day evidentiary hearing at which Jones presented three expert witnesses to support his various mitigation-related ineffective-assistance claims. *Jones*, 2019 WL 385467, at *16. One was an expert in neuropsychology, Dr. Jeffery Madden. The appellate court provided this summary of Dr. Madden's testimony:

> Dr. Madden is an expert in neuropsychology. The trial court found that Dr. Madden had performed a battery of neuropsychological tests on Jones to determine if there were any signs of organic brain injury. During his post-conviction relief testimony, he opined that those results validated Jones' prior diagnosis of schizoaffetive disorder-bipolar type. However, **Dr. Madden could not opine to a reasonable degree of neuropsychological certainty as to the presence or absence of neurological dysfunction or whether Jones suffered from a cognitive disorder attributable to organic brain damage**. However, Dr. Madden did opine to a reasonable degree of scientific certainty that Jones was not malingering at the time that Dr. Madden conducted his tests in January 2013.

*Id*. (emphasis added).

The trial court again denied Jones' petition. *Id*. at *2. It determined that the expert testimony given at the hearing regarding "the manifestations of Jones' mental illness" was consistent with and cumulative to the expert testimony Jones' counsel presented at trial, so even if they were deficient in their mitigation investigation, Jones was not prejudiced by counsel's alleged failure to discover the extent of Jones' mental illness. *Id*. at *17-18. The appellate court affirmed that decision. *Id*.

Jones also raised his second allegedly "new" habeas claim, his eleventh ground for relief, on

7

state post-conviction review. He claimed that his trial counsel were ineffective for relying on their cross-examination of the coroner regarding the cause of Ms. Yates' death, rather than presenting experts who could have refuted the coroner's testimony and supported his defense that he strangled Ms. Yates accidentally during a consensual sexual encounter. (Doc. 18-2 (Post-Conviction Pet.) at 553-55; 589-91.) He submitted supporting affidavits of Dr. Werner Spitz, whom he described as a "renowned forensic pathologist," to establish that he had consensual sex with Ms. Yates, and of Dr. Jay Wiseman, an expert on alternative sexual practices, to educate the jury about the practice and dangers of erotic asphyxiation. (*Id*. at 553, 589; *see also id.* at 600-02 (Spitz Aff.), 769-75 (Wiseman Aff.).) The trial court rejected these claims (*id*. at 847-50), and the appellate court affirmed, *Jones*, 2011 WL 5869752, at *3-6.

Determining when a federal habeas claim has been "fairly presented" to state courts where there are variations in legal theory or factual allegations "is contextual and individual to each case." *Houston v. Waller*, 420 Fed. Appx. 501, 509 (6th Cir. 2011). But generally, "it is sufficient if the substance of the claim was presented to the state courts, such that the ultimate question would have been the same despite [the] variations . . . ." *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008) (citing *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

The legal and factual predicates of Jones' allegedly "new" ineffective-assistance habeas claims are essentially the same as those he presented on state post-conviction review: that trial counsel were constitutionally ineffective for failing to discover, retain, and present appropriate experts – namely, an expert in neuropsychology, to opine on Jones' potential childhood neurological deficits, and experts in forensic pathology and alternative sexual practices, to testify about the nature of Jones' sexual encounter with Ms. Yates and possible cause of her death. "[T]he ultimate

8

question would have been the same despite variations in the [specific expert opinions] urged in [their] support." *Id*.

What is really unexhausted here, then, is not the *claims*, but the *evidence* supporting the claims. And the Sixth Circuit has explicitly rejected the argument that the *Rhines* stay-and-abey mechanism "permits stays for a petitioner to 'exhaust evidence'—in other words, to return to state court to submit additional evidence to buttress claims already exhausted . . . ." *Carter v. Mitchell*, 829 F.3d 455, 466 (6th Cir. 2016).

In *Carter*, a petitioner sought to stay his habeas case and return to state court to present additional evidence supporting claims that were on remand to the district court after the circuit court had determined that he had not procedurally defaulted them. The petitioner had obtained new mitigation evidence, primarily from a social worker's report prepared at the time of his trial but never introduced as evidence, to support ineffective-assistance claims regarding the presentation of mitigation evidence. *Id*. The circuit court denied his request. *Id*. at 467. It determined that because there was no allegation that the evidence at issue was unavailable at the time of his trial, direct appeal and post-conviction proceedings, even though it was never made a part of any state-court record, it was "certainly not new." *Id*. at 466. The evidence might have been "more compelling," it observed, but "that does not by itself allow us to extend *Rhines* stays to encompass 'unexhausted evidence.'" *Id*. at 467.

The circuit court considered the petitioner's request for a stay in *Carter* an attempt "to use *Rhines* as an end-run around *Pinholster*, with the added benefit that a return to state court might delay his impending death for a substantial period." *Id*. In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that a district court's habeas review of claims exhausted in state

9

court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 181.² The court concluded in *Carter* that "[a]llowing a petitioner periodically to discover (or rediscover) information about himself would frustrate that goal, and could incentivize capital defendants to 'deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death.'" *Carter,* 829 F.3d at 467 (quoting *Rhines*, 544 U.S. at 277-78).

Indeed, the Sixth Circuit and its district courts repeatedly have found in capital habeas cases that additional, newly obtained expert reports or opinions were not significant or substantial enough evidence upon which to grant a petitioner's requested relief. One district court, for example, in denying a petitioner's motion for funds to retain an intellectual-disability expert to support his habeas intellectual-disability claim, aptly observed:

---

² In her dissenting opinion in *Pinholster*, Justice Sotomayor observed:

> There may be situations in which new evidence supporting a claim adjudicated on the merits gives rise to an altogether different claim. The majority opinion does not foreclose this possibility.
>
> I assume that the majority does not intend to suggest that review is limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself.

*Id*. at 214 n.5 (Sotomayor, J., dissenting) (citations omitted). She later described another example where new evidence creates a new claim – where a habeas petitioner obtains potentially exculpatory evidence that the State had improperly withheld after the petitioner had already exhausted his *Brady* claim in state courts. *Id*. at 215-16. The majority responded, "Though we do not decide where to draw the line between new claims and claims adjudicated on the merits, . . . Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witness statements . . . may well present a new claim." *Id*. at 186 n.10 (citations omitted). Justice Sotomayor's hypothetical claims are easily distinguished from Jones' alleged "new" claims, however, which are based primarily on facts and scientific information available at the time of his trial, direct appeal, and state post-conviction proceedings.

> In short, [the petitioner] was provided with an opportunity in state court to explore the issue of his mental retardation. After a thorough evaluation, it was determined that [he] did not qualify as seriously mentally retarded under Kentucky [law]. Habeas review is not the proper forum for [the petitioner] to engage in expert shopping in hopes of obtaining a conflicting opinion.

*Woodall v. Simpson*, No. 5:06 CV–P216–R, 2009 WL 464941, at *2 (W.D. Ky. Feb. 24, 2009). *See also Bedford v. Bobby*, 645 F.3d 372, 379 (6th Cir. 2011) ("That different doctors reach different conclusions about an individual's mental health does not itself prove that *any one* of the doctors has shown a cognizable basis for granting a *Ford* hearing.") (emphasis in original); *Murphy v. Ohio*, 551 F.3d 485, 500 (6th Cir. 2009) (discounting affidavit supporting habeas *Atkins* claim because it "add[ed] nothing more than evidence previously offered at trial"); *Group v. Robinson*, No. 4:13 CV 1636, 2016 WL 3033408, at *2 (N.D. Ohio May 27, 2016) (Zouhary, J.) (denying motion to alter or amend judgment based on alleged "new evidence" including a DNA expert report that was not "newly discovered" because petitioner had been advancing DNA claims for years and expert was previously available); *Frazier v. Bobby,* No. 3:09 CV 1208, 2011 WL 5086443, at *25 (N.D. Ohio Oct. 25, 2011) (Gaughan, J.) (finding additional expert report supporting habeas *Atkins* claim offered a different conclusion than expert report submitted to state courts but was not "new evidence" outside the trial-court record such that it would overcome procedural default based on Ohio's *res judicata* bar).

Such is the case here. The experts Jones now presents may present additional information or different assessments and diagnoses than his state post-conviction experts. But Jones does not contend that the information upon which the new expert opinions are based or the scientific data and techniques employed by the experts were unavailable at the time of his trial, direct appeal, or state post-conviction proceedings. This evidence, therefore, may be more compelling, but it is not

11

new. *See Mammone v. Jenkins,* No. 5:16 CV 900, 2018 WL 454432, at *2 (N.D. Ohio Jan. 17, 2018) (Carr, J.) (denying motion to stay to litigate in state courts ineffective-assistance claim based on neuropsychologist's evaluation and new diagnosis, where report was "'new' in the sense that, having been prepared only last year, it did not exist at the time of the 2010 trial" but the materials on which expert based her opinion supporting, with the exception of her interview and testing, were available to the defense at trial and during post-conviction proceedings); *Spivey v. Jenkins*, No. 4:16 CV 384, 2017 WL 1113339, at *9 (N.D. Ohio March 24, 2017) (Pearson, J.) (denying stay and abeyance of habeas case where petitioner's *Atkins* and competency claims were "amenable to indefinite factual development," as "there will always be expert opinions to investigate and present to a court if the [new] experts prove more 'competent' and their opinions more 'relevant and compelling'" than opinions originally presented at trial or post-conviction hearings. But those expert opinions are not 'new evidence.'"). Jones has provided state courts "one full opportunity to resolve [the] constitutional issues by invoking one complete round of the State's established appellate review process," and the claims are exhausted. *O'Sullivan*, 526 U.S. at 845.

*Rhines* does not apply to Jones' tenth and eleventh claims for relief, therefore, and Jones is not entitled to stay-and-abeyance of his habeas action in this court while he attempts to litigate these two ineffective-assistance claims in state court.

### B. Stay Pending State-Court Litigation Under Ohio Law Barring Persons with Serious Mental Illness from Execution

Jones also requests that this case be stayed while he pursues relief under a new Ohio law that excludes persons with serious mental illness from the death penalty. (Doc. 45 at 3.) The statute, Ohio Rev. Code § 2929.025, applies to inmates like Jones who already have been convicted of aggravated murder and sentenced to death and claim they had a serious mental illness ("SMI") as

defined by the statute at the time of the offense. Ohio Rev. Code § 2953.21(A)(1)(a)(iv). These inmates were permitted to file a post-conviction petition asking the court to vacate their death sentence and order resentencing within one year of the statute's effective date, which was April 12, 2021. Ohio Rev. Code § 2953.21(A)(1)(a)(iv), (A)(2)(b). Notably, the filing of an SMI petition "constitutes a waiver of any right to be sentenced under the law that existed at the time the offense was committed and constitutes consent to be sentenced to life imprisonment without parole . . . ." Ohio Rev. Code § 2953.21(A)(3)(b).

Jones filed a petition for post-conviction relief in an Ohio state court on April 6, 2022, alleging he is ineligible for the death penalty under this new law because he has schizoaffective disorder with a bipolar mood disorder, two of the four "serious mental illnesses" specified in the Ohio statute. *See* Ohio Rev. Code § 2929.025(A)(1)(a)(ii), (iii). (*See also* Doc. 46-1 (SMI Petition).) Respondent opposes this request on the grounds that *Rhines* does not apply to this claim because it was not raised in his habeas petition; this state-law claim is not cognizable in habeas; the state-court litigation is independent of this case; and a new sentence would constitute a new judgment subject to review in a new habeas petition. (Doc. 47 at 4-6.)

As Respondent argues, *Rhines* does not apply here, because Jones' SMI claim is based on state law. This Court has equitable authority to stay this case separate and apart from *Rhines*. *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997) (a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket."); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Rhines*, 544 U.S. at 276 (recognizing that AEDPA did not

13

deprive district courts of its authority to stay cases). Factors to consider when determining whether a stay is appropriate are: 1) whether the issues in the collateral proceeding overlap with those in the pending proceeding; 2) the status of the other case; 3) the interests of the parties with respect to any delay; 4) the interests of the courts; and 5) the public interest. *F.T.C v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014).

But a stay is not warranted here. As noted, Jones' state-court SMI litigation is based exclusively on Ohio law, and there exists no such comparable federal constitutional right. The state-court proceedings therefore are entirely independent of this federal habeas case, and this court has no authority to review a state-court decision on the matter. Moreover, Jones will not be harmed by a denial of the stay request, as he may litigate both his state post-conviction proceedings and his federal habeas petition simultaneously. Finally, granting a stay under these circumstances would undermine AEDPA's dual objectives of streamlining habeas proceedings and encouraging finality. *See Maxwell v. Shoop,* Case No. 1:21 cv318, Doc. No. 25 (Oct. 28, 2022) (Lioi, J.); *Obermiller v. Shoop*, Case No. 1:19 cv 2193, Doc. No. 57 (Sept. 13, 2022) (Adams, J.) (denying habeas petitioner's motion to stay while he pursues Ohio state-court SMI litigation); *McKelton v. Shoop*, Case No. 1:18 cv 134, Doc. No. 58 (June 23, 2022) (Marbley, C.J.) (same).

## CONCLUSION

Therefore, for the reasons stated above, the court denies Jones' motion to stay these proceedings and hold them in abeyance while he pursues litigation in Ohio state courts (Doc. 45).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

February 10, 2023